UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAPLE SHADE MOTOR CORP., : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, : | |
| : | CIVIL ACTION NO. 04-2224 (JEI) |
| v. : | |
| : | **OPINION** |
| KIA MOTORS AMERICA, INC., : | |
| : | |
| Defendant. : | |

**APPEARANCES:**

WILENTZ, GOLDMAN & SPITZER P.A.
By: Marvin J. Brauth, Esq.
Kristen Benedetto, Esq.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095
        Counsel for Plaintiff.

KIRKPATRICK & LOCKHART LLP
By: Anthony P. La Rocco, Esq.
Emily L Won, Esq.
One Newark Center, Tenth Floor
Newark, New Jersey 07103

By: Carl J. Chiappa, Esq.
Jason P. Isralowitz, Esq.
599 Lexington Avenue
New York, New York 10022
        Counsel for Defendant.


IRENAS, Senior District Judge:

     The instant action arises from the termination of a

franchise agreement between Defendant Kia Motors America, Inc.

("KMA"), and Plaintiff Maple Shade Motor Corporation ("Maple

Shade"), by KMA, and Maple Shade's subsequent attempt to transfer

the franchise to a third party.  Presently before the Court is

the motion of KMA for partial summary judgment on Count Nine of

Maple Shade's Amended Complaint.  Count Nine alleges that KMA
illegally disapproved the transfer of the franchise under the New
Jersey Franchise Practices Act ("NJFPA").[1]

I.

The facts of this case are set out in detail in the Court's
Opinion of August 26, 2005.  This Court held that KMA had good
cause for and did not violate the NJFPA by terminating the
franchise agreement granting Maple Shade the right to operate a
Kia automobile dealership.  Accordingly, the Court granted
summary judgment for KMA on Count One of Maple Shade's complaint.

Several additional facts are relevant to the instant motion.
By letter dated March 17, 2004, KMA notified Maple Shade that it
was terminating the franchise agreement between the parties,
effective ninety days from Maple Shade's receipt of the letter.
On May 6, 2004, Maple Shade filed an eight-count complaint
challenging the validity of the notice of termination, seeking

---

[1] The Court has federal question jurisdiction pursuant to 28
U.S.C. § 1331 over Maple Shade's claim arising under the
Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 et seq.
The Court has supplemental jurisdiction pursuant to 28 U.S.C.
§ 1367 over the remaining claims, as they are so related to the
federal claim that they form part of the same case or
controversy.  Additionally, the Court has diversity jurisdiction
over the Complaint pursuant to 28 U.S.C. § 1332.  Maple Shade was
incorporated in New Jersey and has its principal place of
business in that state.  KMA was incorporated in California and
has its principal place of business in that state.  The parties
therefore are deemed to be citizens of different states under
Section 1332(c).  The amount in controversy exceeds $75,000.

relief under the NJFPA, as well as other state and federal statutes and principles of common law.

On June 15, 2004, Maple Shade and KMA executed a Consent Agreement[2] which stayed the effective date of the notice of termination pending trial of the instant matter.  The Consent Agreement further stated that:

> It is the intention of this Consent Order to preserve the status quo and not to modify, increase or diminish any of the rights or obligations that either party would otherwise have after the dealer's receipt of a notice of termination and before the effective date of termination under the Dealer Agreement and applicable law.

(Pl. Mot. to Amend, Taylor Decl., Ex. B at ¶ 3)  KMA was permitted to withdraw its consent to the stay on forty-five days' written notice to counsel for Maple Shade.

KMA advised Maple Shade on September 7, 2005, that it was withdrawing its consent to the stay, effective October 22, 2005. On September 8, 2005, Maple Shade executed an asset sale agreement with Vallee & Bowe, which was forwarded to KMA the following day.  By letter dated September 13, 2005, KMA informed Maple Shade that it would consider the proposed sale of the franchise to Vallee & Bowe for settlement purposes only, but that

_____

[2] The Consent Agreement is styled as a "Consent Order." However, it does not appear that the document was ever submitted to District Court Judge Stanley Brotman, the judge then assigned to the matter, for his signature.  The parties appear to have adhered to the Consent Agreement despite the fact that it was not entered as an order.

it believed it was under no obligation to do so based upon this
Court's August, 26, 2005, ruling.

The asset sale agreement provides that Maple Shade will sell
to Vallee & Bowe "free and clear of all leases, liens, security
interest, taxes and encumbrances . . . all of SELLER's right,
title and interest in and to its Kia Motors America, Inc. . . .
motor vehicle dealership business presently located at the
Premises . . ., all of which will be taken by BUYER in 'as is,
where is' condition." (Pl. Mot. to Amend, Dimmerman Decl., Ex.
C, ¶ 1)  The agreement also includes a provision stating that
Vallee & Bowe will not assume any debt or liability of Maple
Shade.  (Id. at ¶ 1(e)) It also states that Maple Shade has fully
disclosed the instant litigation, and that the sale agreement may
be cancelled by Maple Shade or Vallee & Bowe should KMA terminate
the franchise agreement.  (Id. at ¶ 6(a))

KMA agreed to extend its consent to the stay until November
11, 2005, for the purposes of settlement only.  On October 28,
2005, KMA sent Maple Shade a letter rejecting the proposed sale
of the franchise to Vallee & Bowe.  It maintained that Maple
Shade had no franchise rights to transfer to Vallee & Bowe and
that the proposed sale was invalid because Vallee & Bowe did not
have an exclusive showroom for the Kia franchise then available,
as required by the original franchise agreement.  Additionally,
KMA stated that for settlement purposes only it could not approve

4

the proposal.[3]

On November 28, 2005, Maple Shade filed a Motion to Amend the Complaint to add Count Nine, alleging that KMA's refusal to consent to the sale of the franchise to Vallee & Bowe violated the NJFPA's provisions on the transfer of franchises.  N.J.S.A. § 56:10-6.  By Order of March 29, 2006, the Court granted Maple Shade's Motion to Amend.  Maple Shade filed its Amended Complaint on May 9, 2006.

II.

Under Fed. R. Civ. P. 56(c) a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact.  Id.

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to

---

[3] KMA agreed to a subsequent extension of the stay until December 7, 2005.

the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794

F.2d 860, 864 (3d Cir. 1986).  The role of the court is not to

"weigh the evidence and determine the truth of the matter, but to

determine whether there is a genuine issue for trial."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).


### III.

The NJFPA was enacted to remedy the disparity in bargaining

power between franchisors and franchisees, including "the

protection of franchisees who have conscientiously striven to

carry out their obligations under the franchise agreement. . . ."

*Amerada Hess Corp. v. Quinn*, 143 N.J. Super. 237, 254 (Law Div.

1976).  It contains a specific provision both limiting and

protecting the right of a franchisee to transfer its franchise

rights:

> It shall be a violation of this act for any franchisee
> to transfer, assign or sell a franchise or interest
> therein to another person unless the franchisee shall
> first notify the franchisor of such intention by
> written notice setting forth in the notice of intent
> the prospective transferee's name, address, statement
> of financial qualification and business experience
> during the previous 5 years.  The franchisor shall
> within 60 days after receipt of such notice either
> approve in writing to the franchisee such sale to
> proposed transferee or by written notice advise the
> franchisee of the unacceptability of the proposed
> transferee setting forth material reasons relating to
> the character, financial ability or business experience
> of the proposed transferee.  If the franchisor does not
> reply within the specified 60 days, his approval is
> deemed granted.  No such transfer, assignment or sale
> hereunder shall be valid unless the transferee agrees

6

in writing to comply with all the requirements of the
franchise then in effect.

N.J.S.A. § 56:10-6.  Maple Shade argues that KMA violated this

provision because its rejection of the proposed sale was not

based upon "the character, financial ability or business

experience" of Vallee & Bowe.

The facts of this case are indistinguishable from those in

*Authorized Foreign Car Specialists of Westfield, Inc., v. Jaguar*

*Cars, Inc.*, No. Civ.A.92-3760, 1997 WL 33812275 (D.N.J. Feb. 4,

1997), *aff'd* No. 98-6008, 1998 WL 34347444 (3d Cir. Nov. 16,

1998)("*Westfield*").  In *Westfield*, the franchisor served the

franchisee with a notice of termination based upon the alleged

unapproved transfer of the franchisee's franchise rights to a

proposed buyer and an amended notice stating additional grounds

for the termination.  To avoid the termination of its franchise,

the franchisee sought to transfer its franchise to a series of

proposed buyers.  The franchisor told the franchisee that the

termination notice deprived the franchisee of the right to sell

the franchise, but agreed to review the proposed sales.  The

franchisor rejected each proposed buyer.  During the period after

the issuance of the notices of termination and while the

franchisee was attempting to locate a buyer, the franchisee was

permitted to operate the franchise pursuant to a stipulation

entered into by the parties in conjunction with the franchisee's

lawsuit to enjoin the termination.

The district court in *Westfield* concluded that the
franchisor did not violate § 56:10-6 by refusing to agree to the
transfer of the franchise.  It stated:

> After plaintiffs were served with the notices of
> termination, the most they had to sell was a franchise
> subject to those notices and one that would perforce
> terminate should those notices be sustained.  Because
> the NJFPA requires that a transferee 'agree[] in
> writing to comply with all of the requirements of the
> franchise then in effect,' this Court finds that all
> three attempted assignments violated the NJFPA as well
> as basic contract principles."

1997 WL 33812275 at *5.  In affirming the district court, the
Third Circuit noted that "an assignor cannot transfer an interest
greater than its own."  1998 WL 34347444 at *2.

Here, KMA served Maple Shade with a notice of termination.
This Court previously held that KMA had good cause to terminate
Maple Shade's Kia franchise.  While KMA has agreed to stay the
effective date of the termination notice, it agreed only to
maintain the "status quo and not to modify, increase or diminish
any of the rights or obligations that either party would
otherwise have *after the dealer's receipt of a notice of
termination and before the effective date of termination*."  (Pl.
Mot. to Amend, Taylor Decl., Ex. B at ¶ 3)(emphasis added).  As
*Westfield* makes clear, the status quo during that time was that
Maple Shade had no franchise rights to transfer "free and clear"
to Vallee & Rowe.

This Court also notes that the NJFPA "does not compensate

8

those franchisees who have lost their franchises as a result of their own neglect or misconduct." *Dunkin' Donuts of America, Inc., v. Middletown Donut Corp.*, 100 N.J. 166, 178 (1985). Furthermore, the statute provides that "[i]t shall be a defense for a franchisor, to *any action* brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto." § 56:10-9 (emphasis added).

Plaintiff relies on the decision of the Florida District of Appeal in a case interpreting the NJFPA for the proposition that the § 56:10-9 defense does not apply to an action by a franchisee based upon a franchisor's violation § 56:10-6. *Mercedes-Benz of North Am. v. Dep't of Motor Vehicles of the State of Fla.*, 455 So.2d 404, 410-11 (Fla. Dist. Ct. App. 1984). *Mercedes-Benz* is distinguishable from the matter before this Court. In that case, the franchisor purported to terminate the franchise based upon the franchisee's attempt to transfer the franchise to a third party pursuant to § 56:10-6. The franchisor did not comply with § 56:10-6's requirement that it provide written notice to the franchisee of the reasons for its rejection of the sale to the proposed buyer, but simply terminated the franchise instead.

Here, however, KMA gave notice of termination to Maple Shade over a year before Maple Shade proposed the sale to Vallee &

Bowe.   This Court ruled that KMA had good cause for terminating

Maple Shade's franchise based upon Maple Shade's failure to

substantially comply with the franchise agreement's requirement

that it build a separate Kia showroom.   Maple Shade's attempt to

sell its franchise occurred *after* this Court upheld the notice of

termination.   While the rule of *Mercedes-Benz* may apply when a

franchisor terminates a franchise based upon the franchisee's

attempt to sell the franchise in conformance with § 56:10-6, that

is not the case here.

Moreover, specific performance is the remedy contemplated

for a franchisor's violation of the requirement of § 56:10-6 that

it provide a franchisee with written notice of its reasons for

disapproving the proposed buyer.   *See VW Credit, Inc., v. Coast*

*Automotive Group, Ltd.*, 346 N.J. Super. 326, 343 (App. Div.

2002).   A franchisor that has already properly provided notice of

termination based upon the franchisee's failure to substantially

comply with the franchise agreement should not be compelled to

allow the franchise to continue, whether with the current

franchisee or a prospective one.

IV.

For the reasons set forth above, KMA's Motion for Partial
Summary Judgment will be granted.   The Court will enter an
appropriate order.

Date: August __8__, 2006

JOSEPH E. IRENAS
Senior United States District Judge

11